USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/16/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
EDWARD J. GILDEA,

               Plaintiff,           10 Civ. 3347 (DAB)
-against-                         MEMORANDUM AND ORDER

BLDG MANAGEMENT,

               Defendant.
------------------------------------X
DEBORAH A. BATTS, United States District Judge.

    On June 24, 2011, United States Magistrate Judge Michael H. Dolinger issued a Report and Recommendation (the "Report"), recommending that Defendants' Motion to Dismiss in favor of arbitration be GRANTED. (Report at 2.) For the reasons set forth below, after a _de novo_ review following the objections of Parties, the Report and Recommendation of Magistrate Judge Dolinger dated June 24, 2011 shall be adopted as to its factual recitations (_id._ at 2-6); and as to its conclusion that Plaintiff's suit is barred by the arbitration clause contained in the Collective Bargaining Agreement ("CBA") at issue in this case, absent a _Pyett_ exception (Report at 16-22, 46-47). The Report's legal reasoning concerning the existence of and the standards governing an "exception" to the Supreme Court's holding in _14 Penn Plaza LLC v. Pyett_, 129 S.Ct 1456 (2009) is modified as detailed herein. Because the Court holds that the terms of the CBA at issue do not constitute a prospective waiver of

Plaintiff's statutory rights, no exception to the Pyett rule provides access to the judicial forum in this case. Accordingly, the Report's finding that Defendant effectively invoked arbitration against Plaintiff's labor union during the pendency of this action is rejected as moot.

Having conducted the appropriate levels of review of the Report, the Court now GRANTS Defendant's Motion to Dismiss.

I.   Objections to the Report and Recommendation

"Within fourteen days after being served with a copy [of a Magistrate Judge's Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); accord 28 U.S.C. § 636(b)(1)(C). The court may adopt those portions of the report to which no timely objection has been made, as long as there is no clear error on the face of the record. Wilds v. United Parcel Serv., Inc., 262 F.Supp.2d 163, 169 (S.D.N.Y. 2003). A district court must review de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). "To the extent, however, that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." Indymac Bank, F.S.B. v.

2

Nat'l Settlement Agency, Inc., No. 07-CV-6865, 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008); see also Ortiz v. Barkley, 558 F.Supp.2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition.") (citation and internal quotation marks omitted). After conducting the appropriate levels of review, the Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate. 28 U.S.C. § 636(b)(1)(C).

On July 20, 2011, Plaintiff filed timely Objections to the Report, in which Plaintiff expressly adopted the proposed Objections submitted by proposed intervenor Service Employees International Union 32BJ ("SEIU 32BJ" or the "Union"), the labor union of which Plaintiff is a member. (Docket #34.) Specifically, Plaintiff argues (1) that Defendant did not make an effective demand for arbitration, and (2) that Magistrate Judge Dolinger erred in concluding that plaintiff seeking to bring suit under the "Pyett exception" must make a threshold showing that a breach of the duty of fair representation has occurred. (See id.) On July 29, 2011, Defendant filed a timely reply to Plaintiff's Objections.

3

The Court reviews the objected-to portions of the Report <u>de novo</u>.

II. Discussion

A. Arbitrability

No Party has objected to the Report's well-reasoned holding that Plaintiff's claim is barred by the CBA's arbitration clause in the absence of an exception to <u>Pyett</u>'s core holding. See Report at 11-22. The Court has reviewed that portion of the Report, which is in accordance with the Supreme Court's interpretation of essentially identical contractual provisions in <u>Pyett</u>, and finds it to be without clear error. Accordingly, the Court approves, adopts, and ratifies the Report's conclusion that Plaintiff's claim is barred by the arbitration clause, unless a <u>Pyett</u> exception prevents enforcement of the CBA's arbitration clause.

B. <u>Pyett</u> Exception

The essential dispute in this matter is whether an exception to Pyett's core holding allows Plaintiff to bring a claim which would otherwise be barred by the CBA's arbitration clause. The Report concluded that such an exception might apply, should

Plaintiff be able to establish that the Union breached its duty of fair representation, but that any such "exception must be premised on, and incorporate the standards of, a hybrid § 301/duty-of-fair-representation claim." (Report at 34.) Accordingly, the Report interpreted Plaintiff's complaint to allege a breach of the CBA by Defendant and a breach of § 301 of the Labor Management Relations Act by the Union. (See Report at 22-39.)

Plaintiff, in his Objections, urges the Court to follow the courts within this District which have found that an exception to Pyett's rule applies whenever a plaintiff's labor union has declined to arbitrate on his behalf, without regard to whether the union has breached its duty of fair representation. (See Pl's Obj.) Defendant responds, in essence, that the Court need not consider the propriety of the Report's conclusions concerning the standards governing any Pyett exception, in light of the Report's conclusion that Defendant properly invoked arbitration against the Union during the pendency of this lawsuit.

In resolving whether a Pyett exception applies here, a close reading of the majority's holding in that case, and of the cases cited by the Pyett Court, is illuminating.

i. The Scope of Pyett's Exception

In Pyett, the Supreme Court held that a union-negotiated arbitration clause, contained in a CBA, could waive individual employees' access to the judicial forum to pursue statutory rights. 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 129 S.Ct 1456 (2009). In reversing the Second Circuit's rule to the contrary, the Pyett Court noted that though a union "enjoys broad authority . . . in the negotiation and administration of the collective bargaining contract . . . this broad authority is accompanied by a responsibility of equal scope, the responsibility and duty of fair representation." Pyett, 129 S.Ct at 1463 (citations and internal quotations omitted). The Court next found that the claims asserted were within the scope of the arbitration clause; that Congress had not intended such claims to be non-arbitrable; and that Congress, in passing the ADEA, had not removed ADEA claims from the bargaining authority provided to unions under the National Labor Relations Act. Id. at 1464-66. Accordingly, the Pyett Court found no grounds to strike down the arbitration clause, which "clearly and unmistakably [required] respondents to arbitrate the age-discrimination claims at issue." Id. at 1466.

Having so held, the Court explained that concerns about "the union's exclusive control over the manner and extent to which an individual's grievance is presented" presented no grounds for

avoiding arbitration of the statutory discrimination claims alleged. Pyett at 1472 (citation omitted). In so holding, the Court examined the purpose and effect of the National Labor Relations Act and concluded that "[i]t was Congress' verdict that the benefits of organized labor outweigh the sacrifice of individual liberty that this system necessarily demands." Pyett, 129 S.Ct. at 1472-73. The Pyett respondents' "argument that they were deprived of the right to pursue their ADEA claims in federal court by a labor union with a conflict of interest [was] therefore unsustainable; it amount[ed] to a collateral attack on the [National Labor Relations Act]." Pyett, 129 S.Ct. at 1473.

Having held that respondents were bound by the arbitration clause, the Pyett Court noted, in dicta, that though arbitration clauses contained in CBAs are enforceable against individual union members, "a substantive waiver of federally protected civil rights will not be upheld." Pyett, 129 S.Ct. at 1474 (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 and n. 19 (1985) and Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28 (1991)). The Court expressly declined to address "whether the CBA allows the Union to prevent respondents from 'effectively vindicating' their 'federal statutory rights in the arbitral forum.'" Pyett, 129 S.Ct. at 1474 (quoting Green Tree Financial Corp.-Ala v. Randolph, 531

U.S. 79, 90 (2000). It is this dicta which Plaintiff contends creates an exception to Pyett's core holding, which Plaintiff suggests allows employees to proceed in federal court whenever their union prevents them from pursuing statutory claims in arbitration, without regard to whether the union breaches the duty of fair representation it owes that employee. However, as the Pyett Court's citation to prior cases involving arbitration should make clear, the Pyett dicta does not allow courts to disregard arbitration clauses whenever a plaintiff feels that he hasn't been fairly treated by the union of which he is a member. Rather, under standards well-established in case law, courts should decline to enforce arbitration clauses which prospectively waive a plaintiff's statutory rights or which prevent him from effectively vindicating them in arbitration.

An examination of the cases cited by the Pyett Court and of "effective vindication" cases in this Circuit shows that no exception applies in this case, since nothing in the terms of the CBA prospectively waives Plaintiff's statutory rights or prevents him from vindicating them in the arbitral forum.

Section 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, provides that an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." "As 'the

8

primary substantive provision,' Section 2 'create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the' FAA." In re American Express Merchants' Litig., 634 F.3d 187, 194 (2d Cir. March 11, 2011) (quoting Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983). In the Second Circuit, as in other Circuits, courts evaluate the enforceability of arbitration agreements under the federal substantive law of arbitrability, which includes a vindication of statutory rights analysis. Id. Under that analysis, a "federal court will compel arbitration of a statutory claim only if it is clear that 'the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum,' such that the statute under which its claims are brought 'will continue to serve both its remedial and deterrent functions.'" Ragone v. Atlantic Video at the Manhattan Center, 595 F.3d 115, 125 (2d Cir. 2010) (quoting Mitsubishi, 473 U.S. at 637). Thus, if the "terms of an arbitration agreement serve[] to act 'as a prospective waiver of a party's right to pursue statutory remedies . . ., [a court] would have little hesitation in condemning the agreement as against public policy.'" Id. (quoting Mitsubishi, 437 U.S. at 637, n. 19). The inquiry is focused on the clear terms of the arbitration agreement and is addressed to whether those terms

9

prevent the plaintiff from vindicating his statutory rights in arbitration. See Green Tree Fin. Corp.-Ala., 531 U.S. at 89-92.

Arbitration contracts prevent effective vindication of rights when, for example, they contain choice-of-forum clauses that effectively prevent the arbitrator from applying the statute in question (Mitusbishi, 473 U.S. at 637 and n. 19); when they impose such high arbitration costs on plaintiffs that arbitration is impracticable (In re American Express Merchants' Litig., 634 F.3d 187, 197-98 (2d Cir. 2011); when they shorten the statute of limitations provided for by statute (see Ragone, 595 F.3d at 125-26); or when they award fees to the prevailing party though no such fee-shifting is provided by statute (see id.). In short, a court should decline to enforce the terms of arbitration agreements whenever those "provisions [are] incompatible with [the plaintiff's] ability to pursue her [statutory] claims in arbitration, and [the provisions are] therefore void under the FAA." Ragone, 595 F.3d at 126. The burden of showing that an arbitration clause is incompatible with substantive rights is on the party seeking to avoid arbitration. See Green Tree Fin. Corp.-Ala., 531 U.S. at 89-92 (declining to invalidate an arbitration agreement where the record was silent on the agreement's distribution of costs, despite plaintiff's allegation that she would be saddled with prohibitive costs and thus unable

10

to vindicate her statutory rights); accord, In re American Express Merchants' Litig., 634 F.3d 187, 197 (2d Cir. 2011) (requiring party seeking to avoid arbitration on ground of unfair financial expense of arbitral process to show the likelihood of incurring impermissibly high costs).

ii. Application

Here, Plaintiff has not identified any specific provisions of the CBA which prevent him from effectively vindicating his statutory rights in the arbitral forum. Rather, as the Report found, Plaintiff in substance "argues that his union's refusal to adjudicate his claim through its internal grievance process entitles him to pursue his action against the employer in federal court rather than through arbitration." (Report at 2).

As shown above, Pyett's dicta does not give rise to a new exception to arbitrability. To avoid enforcement of the CBA's arbitral waiver, Plaintiff bears the burden of showing that the provisions of the CBA prevent him from effectively vindicating his statutory rights through arbitration.

As the Report found and as no Party challenges, the CBA unequivocally waives employees' recourse to litigation on statutory discrimination claims. With regard to enforcement of such claims in arbitration, the CBA provides that all

discrimination "claims shall be subject to the grievance and arbitration procedure (Article V) as the sole and exclusive remedy for violations." (Priolo Decl., Ex. A at Art X, § 26). Article V, the CBA's grievance and arbitration procedure, sets out a specific procedure by which a grievance or dispute between the Union and the employer is to be initiated. Article V is silent on how arbitration of an employee's claim is to be initiated when the Union declines to grieve it on his behalf, but does not foreclose the possibility that an employee may proceed to arbitration without Union participation.[1] Accordingly, the Court finds that the CBA does not prevent Plaintiff from seeking to arbitrate his claim without Union participation.

This reading of the CBA is consistent with the Union's apparent understanding of essentially similar language contained in another CBA. After the Supreme Court's decision in Pyett, the Union entered into a supplemental agreement which augmented the CBA at issue in that case, the RAB CBA, and which established the procedures individual employees bound by the RAB CBA must follow

---

[1] In Pyett, a case involving identical contract language and the same Union, the Supreme Court noted "record evidence that the Union has allowed respondents to continue with the arbitration even though the Union has declined to participate." 129 S.Ct. at 1474. Here, the record does not reflect whether Plaintiff attempted to bring an arbitration on his own behalf after the Union declined to grieve his claim.

12

in arbitrating their claims as individuals after the Union declines to participate. See Duruku v. Tishman Speyer Props., Inc., No. 09 Civ. 9351 (DLC) (May 27, 2010) (describing procedures established by supplemental agreement between the Union and the RAB). Nothing on the face of the CBA here prevents similar gap-filling measures. The Union is therefore estopped from arguing that essentially identical language in the instant CBA prevents individual employees from arbitrating claims without Union participation.

A further provision of Article V provides that "[a]ll Union claims are brought by the Union alone and no individual shall have the right to compromise or settle any claim without the written permission of the Union." (Priolo Decl. Ex. A at Art. V.) At first blush, this provision seems to require Union participation whenever a discrimination claim is arbitrated pursuant to the CBA. However, employees possess a statutory right of non-discrimination, and that statutory right exists separate and apart from the labor union's right to pursue remedies against a discriminatory employer, which arises under the bargained-for terms of the CBA. See, e.g., Wright v. Universal Maritime Service Corp., 525 U.S. 70, 119 S.Ct. 391 (1998) (considering arbitrability of employee's statutory claim, which arose under the Americans with Disabilities Act, separately

13

from arbitrability of his union's contractual claim based on same employer conduct, which arose under negotiated CBA); Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 745, 1010 S.Ct. 1437 (1981) ("In sum, the FLSA rights petitioners seek to assert in this action are independent of the collective-bargaining process. They devolve on petitioners as individual workers, not as members of a collective organization."); Alexander v. Gardner-Denver Co., 415 U.S. 36, 4950, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974)(reasoning that a grievance is designed to vindicate a "contractual right" under a CBA, while a lawsuit under Title VII asserts "independent statutory rights accorded by Congress[,]" and the "distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence." ). Therefore, allowing an individual employee to pursue or to settle his statutory discrimination claim through arbitration without Union participation is wholly consistent with forbidding an individual employee from settling a Union claim for breach of the CBA.

Accordingly, though Article X, § 26 of the CBA requires Plaintiff to arbitrate his statutory claims alleging discrimination, nothing on the face of the CBA, in Article V or elsewhere, requires the Union to participate in Plaintiff's

14

arbitration. No Party has put forth evidence showing that the CBA prevents Plaintiff from effectively vindicating his statutory rights through arbitration as an individual. Nor do the terms of the CBA prospectively waive Plaintiff's statutory rights, since the CBA provides that "[a]rbitrators shall apply appropriate law in rendering decisions based upon claims of discrimination." (Priolo Decl., Ex. A., at Art. X. § 26). Under Pyett, Plaintiff is therefore barred from bringing his claims in this Court rather than in arbitration.

Plaintiff has not shown that the CBA prevents him from effectively vindicating his statutory rights in the arbitral forum. The CBA's waiver of the judicial forum must be enforced, and the Motion to Dismiss and Compel Arbitration must be and hereby is GRANTED.

Because the Court now holds that Plaintiff's suit is barred by the arbitration clause in the CBA, and that no exception to Pyett applies to allow Plaintiff recourse to the judicial forum, the Court need not reach whether the CBA allowed Defendant to invoke arbitration against the Union on Plaintiff's claim during the pendency of this lawsuit. The portion of the Report which concerns Defendant's attempt to invoke arbitration against the Union is therefore rejected as moot.

IV. Conclusion

Having conducted the appropriate levels of review of the Report and Recommendation of United States Magistrate Judge Michael H. Dolinger dated June 24, 2011, the Court APPROVES, ADOPTS, and RATIFIES the Report's factual findings and recitations. (See Report at 2-19.) The Court modifies the Report's findings of law and legal conclusions as set forth in this Order. Accordingly, Defendants' Motion to Dismiss is GRANTED in its entirety. This dismissal is without prejudice to Plaintiff's pursuing arbitration of his claim against Defendant, with or without the Union's participation, or to Plaintiff's bringing suit against the Union, should it breach its duty of fair representation in determining whether to participate in arbitration or during the course of arbitration. The Clerk of Court is directed to close the docket in this case.

SO ORDERED.

Dated: New York, New York

August 16, 2011

*Deborah A. Batts*

DEBORAH A. BATTS
United States District Judge